**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ALBERT PALMER,**

        **Plaintiff,**

**v.**                                                      **Civil Action No. 3:07cv31**
                                                         **(Judge Maxwell)**

**US ATTORNEY ALBERTO GONZALES,**
**HARLEY LAPPIN, Director of BOP,**
**K.M. WHITE, Mid Atl. Reg. Off.,**
**JOE DRIVER, Warden,**
**AL HAYNES, Warden,**
**CHRISTOPHER GREINER, Unit Mgr.,**
**DAVID CRICKLAND, Case Manager,**
**LT. B. GORUNDY,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On March 14, 2007, the *pro se* plaintiff initiated this case by filing a complaint against the above-named defendants which was docketed pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). In addition, he appears to request habeas relief under 18 U.S.C. § 2241 challenging a Disciplinary Hearing Officer's ("DHO") sanctions imposed following a finding that the plaintiff was guilty of Assaulting any Person in violation of Discipline Code 101. Finally, it appears that the plaintiff also includes a claim pursuant to the Federal Tort Claim Act for injuries sustained on May 4, 2006, and the subsequent medical care which he claims was inadequate.[1] The plaintiff was granted permission to proceed as a pauper on March 15, 2007, and paid an initial partial

---

[1] The undersigned notes that the plaintiff's complaint is 87 pages long and includes handwritten pages interspersed with various forms from, and to, BOP staff. Therefore, although legible, it is difficult to discern the exact claims the petitioner is making.

filing fee on March 29, 2007. Upon a preliminary review of the file, the undersigned determined that summary dismissal was not appropriate at that time and directed the United States Marshal Service to serve the Complaint.

On August 20, 2009, the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on January 15, 2009.[2] The plaintiff filed a response to the defendants' motion on October 26, 2009.

This case is before the undersigned for a report and recommendation on the pending motions.

## II. Contentions of the Parties

### A. The Complaint

Although not stated with specificity, a fair reading of the complaint establishes that the plaintiff alleges that defendants Crickland and Gorundy used excessive force against him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. In support of this claim, the plaintiff asserts that on May 4, 2006, while he was confined to USP Hazelton, these two defendants, and other unknown individuals, administered a vicious beating to him. More specifically, the plaintiff asserts that after he was restrained and lying on the floor handcuffed, the defendants beat him and kicked him several times in the face. The plaintiff claims that his forehead was opened up, and blood from his wound was all over the floor. The plaintiff further asserts that as a result of his head injuries, he experiences blackouts, frequent dizziness, memory loss, and constant headaches. In addition, he alleges that his neck and lower back tend to be excruciatingly painful on a frequent basis. Finally, the plaintiff alleges that his right arm is completely numb on

---

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

occasion and sometimes twitches uncontrollably.

In addition to his underlying claim of excessive force, the plaintiff also appears to make a general assertion that he has been denied adequate medical care for his injuries. Although not named as a defendant, the plaintiff alleges that Ms. Puri, Health Services Administrator, was fully aware of all his injuries but chose to be "willfully blind, deliberately indifferent, [and] deceptive. In addition, although not named as a defendant, the plaintiff asserts his Unit Manager, Chris Pulice, willfully engaged in delaying and impeding the plaintiff's efforts to seek chronic care service. Finally, the plaintiff alleges that his vital health concerns were generally ignored.

With respect to his Federal Tort Claim, the plaintiff alleges that he submitted an administrative tort claim to the Mid Atlantic Regional Office on June 4, 2006.[3] The plaintiff further alleges that as of the date he filed his complaint with this court, he had not heard or received any response or receipt of (courtesy) acknowledgment." (Doc. 1, pg. 29).Noting that the government has up to 180 days to bring closure to such claims, and that said period time had long since elapsed, the plaintiff asks the court to finalize the matter.

Finally, the plaintiff complains that he should not have been subject to a BOP disciplinary hearing regarding an allegation that he committed an assault after he was acquitted in the district court of the same charge. The plaintiff asserts that the BOP did not have the authority to "undermine or supercede a decision...ruled on in U.S. District Court."

As relief, the plaintiff indicates he "is simply asking for full alleviation through U.S. District Court. Additionally, [he is] asking to be awarded the entire sum of compensation 'firmly' based on

---

[3]Included in the his complaint packet, is a copy of an administrative Tort claim, dated June 4, 2006, seeking $100,000 in for personal injury suffered on May 4, 2006 as a "result of an ugly altercation." (Doc. 1, p. 34).

the B.O.P overall negligence, and long term suffering [he has] endured." (Doc. 1, p. 10).

**B.     The Defendant's Motion to Dismiss**

In their memorandum in support of their motion to dismiss or, in the alternative, for summary judgment, the defendants argue that the plaintiff's complaint should be dismissed for the failure to state a claim for which relief may be granted. In support of that argument, the defendants assert:

(1) the plaintiff's claims against Defendants Lappin, White, Driver and Haynes should be dismissed based on the theory of respondeat superior;

(2) the plaintiff's FTCA claims should be dismissed for lack of subject matter jurisdiction;

(3) the plaintiff's Bivens claims should be dismissed because he failed to exhaust all available administrative remedies;

(4) the plaintiff's claims against Defendants Crickard and Gorundy should be dismissed because his allegations do not state a constitutional claim actionable under Bivens;

(5) the plaintiff fails to state a claim for which relief can be granted regarding his February 21, 2007 disciplinary hearing;

(6) the DHO's imposition of sanctions against plaintiff did not violate plaintiff's due process rights;

(7) the plaintiff's claim that Defendant Greiner impeded plaintiff's access to the courts fails to identify an actual injury; and

(8) the defendants are entitled to qualified immunity.

**C.     The Plaintiff's Response to the Defendants' Motion to Dismiss**

In his response to the motion to dismiss, the plaintiff asserts that the government is merely trying to avoid being responsible for the assault committed by it officers. As further support for his

claim, the plaintiff has submitted 27 pages of medical records. However, he makes no factual or legal argument in opposition to the defendants' motions.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

5

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do

more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Factual Background**

On May 4, 2006, the plaintiff met with defendant Crickard in the E-1 Counselor's office at USP Hazelton to discuss the plaintiff's recent return to general population from the Special Housing Unit ("SHU"). During the meeting, the plaintiff expressed his desire to return to the same cell and bunk he occupied prior to being placed in the SHU. Defendant Crickard explained to the plaintiff that his previous cell assignment was no longer available. The plaintiff became agreesive and stated that he was "done talking!" Defendant Crickard asked the plaintiff if he intended this statement as a threat. The plaintiff again stated, "I'm done talking," and then walked out of the office.

Approximately ten (10) minutes later, the plaintiff returned to defendant Crickard's office with a lock attached to an inmate issued belt tied around his right hand. Defendant Crickard backed away from his desk and called for assistance. Before assistance could arrive, the plaintiff attempted to strike defendant Crickard with the lock but struck the desk instead. The plaintiff then ran around the desk swung the lock again at defendant Crickard. Using his left arm, defendant Crickard blocked a direct blow. The plaintiff again swung the lock, but defendant Crickard was able to grab the lock and the plaintiff's arm to prevent any further attack. Although the plaintiff continued fighting, defendant Crickard was able to take him to the ground and maintain control of the weapon. Defendant Crickard ordered the plaintiff to place his hands behind his back and cuff up. The plaintiff refused to comply and continued to fight and try to free the hand to which the weapon was attached. Shortly thereafter, responding staff began to arrive, subdued the plaintiff and secured him in hand restraints. Staff then escorted the plaintiff to the SHU. (Doc. 70-3, pp. 1-4). A medical evaluation was conducted on the plaintiff which revealed a small, (½) inch laceration and contusion on his forehead. The area was cleaned with a disinfectant and three (3) steristrips were applied. The plaintiff's primary care provider determined that he did not require additional treatment or diagnostic testing. (Doc. 70-4, p. 2).

On August 15, 2006, the plaintiff was indicted for Assault with a Dangerous Weapon in violation of 18 U.S.C. § 113(a)(3). Following a two day trial on December 13-14, took, before the Honorable Irene M. Keeley, he was acquitted. See U.S. v. Palmer, 2:06cr22, Document No. 68.

Pursuant to the incident report from the May 4, 2006 assault, the plaintiff was subjected to a disciplinary hearing on February 121, 2007. The plaintiff was found to have committed the prohibited act of "Assaulting Any Person," and was sanctioned as follows: (1) Disallow 40 days

Good Conduct Time; (2) 60 days Disciplinary Segregation; (3) 18 months Loss of Commissary privileges with 6 months suspended 180 days pending clear conduct; (4) 18 months Loss of telephone privileges with 6 months suspended 180 days pending clear conduct; and (5) Recommend Disciplinary Transfer. (Doc. 70-1, pp. 23-26).

**B.    Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

---

[4] Porter v. Nussle, 534 U.S. 516, 524 (2002).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In their response, the defendants assert that the plaintiff has not exhausted his administrative remedies regarding any of his complaints. In support of this assertion, the defendants have provided a Declaration from Kevin Littleton, a Legal Assistant at the Mid-Atlantic Regional Office of the BOP, together with a computer generated list of every administrative remedy submitted by the plaintiff. The Declaration and attachment establish that the plaintiff has filed seventy-two (72) requests for administrative remedy. However, he has exhausted only one - Administrative Remedy I.D. number 447298-A3, in which he appealed the DHO decision regarding the May 4, 2006 assault on Correctional Counselor Crickard. Accordingly, the defendants argue that the plaintiff's Bivens claims against each of the named defendants should be dismissed. The undersigned agrees and recommends that the plaintiff's Bivens claims be denied for failure to exhaust administrative remedies.

In making this recommendation, the undersigned recognizes that a prison's administrative

remedies can be rendered "unavailable" for purposes of exhaustion when officials refuse to provide an inmate with required grievance forms. See Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (vacating a grant of summary judgment on exhaustion grounds where the defendants failed to supply any reason for the plaintiff being refused the necessary forms); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (finding district court erred by not addressing plaintiffs' claims that prison officials failed to provide him with appropriate grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (exhaustion requirement may be satisfied where prisoner raises allegations that prison officials failed to provide him with the necessary grievance forms).

Although the plaintiff's complaint contains allegations that defendant Greiner was intentionally indifferent regarding the filing of his administrative remedy solutions and stagnated his efforts with the medical claims, he provides no concrete assertion of how defendant Greiner hindered the administrative remedy process. Certainly, he makes no specific allegation that defendant Greiner refused to provide him with administrative remedy forms or failed to respond to the plaintiff's complaints. Furthermore, the court has before it the Declaration of Chris Greiner. Following the assault in May of 2006, the plaintiff was transferred to the Special Housing Unit ("SHU"), where defendant Greiner was the Unit Manager. Defendant Greiner notes that he made weekly rounds in the SHU with all department head, the Warden and other member of the Executive Staff. Defendant Greiner further notes on some occasions, while making rounds, the plaintiff would ask him to make copies of various documents and/or administrative remedies and attachments. Defendant Greiner indicates that he would take the documents and pass them along to the plaintiff's counselor, who then made the requested copies and returned them to the plaintiff. Finally defendant Greiner states that he never interfered with the plaintiff's access to the administrative remedy

process. (Doc. 70-8, pp. 1-2).

In conclusion, given that the plaintiff filed fifty-four (54) administrative remedies after the May 4, 2006 assault, and before his August 7, 2007, transfer from USP Hazelton to another institution, it is virtually impossible to give credence to any possible allegation that defendant Greiner, or any other USP Hazelton employee denied the plaintiff access to the administrative remedy process.[5] Therefore, the undersigned continues to recommend that the plaintiff's <u>Bivens</u> complaint against the named defendants be denied for failure to exhaust administrative remedies.

## C. **Federal Tort Claim Act**

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the provisions of the FTCA, the administrative process must be fully exhausted before FTCA claims may be brought in an action in federal court. 28 U.S.C. § 2675(a). Administrative exhaustion under the FTCA requires an inmate to submit written notification of the incident-accompanied by a sum certain claim monetary damages-to the federal agency responsible for the activities giving rise to the claim. <u>See</u> 28 C.F.R. § 14.2 (a) and (b0(1). The inmate may file

---

[5]In fact, the majority of the plaintiff's complaints regarding his experience with the BOP's administrative remedy process seem to stem from its technical requirements which he consistently failed to meet, resulting in multiple rejections of his remedies

an FTCA suit in federal court only after the agency denies the inmate's claim, and must do so within six months of the mailing of the denial. 28 C.F.R. § 14.9. An administrative tort claim is statutorily presumed denied if six months pass without action on a properly filed administrative claim. 28 U.S.C. § 2675(a).

The defendants have submitted the Declaration of Clarrisa Owen, the Legal Instruments Examiner at the Mid-Atlantic Regional Office of the BOP. Ms. Owens indicates that she conducted a search of the BOP's Administrative Tort Database to find all of the administrative torts submitted to the BOP by the plaintiff. Her search revealed that the plaintiff had filed a total of eight (8) administrative tort claims between June 21, 2004, and February 28, 2008. Of these, two are duplicative: TRT-MXR-2008-08361 is a duplicate of TRT-MXR-2009-02781, and TRT-MXR-2006-0560 is a duplicate of TRT-MXR-2006-05518. According to Ms. Owens, each of the administrative tort claims filed by the plaintiff pertained to loss of personal property. (Doc. 70-2, pp. 1-2). The defendants allege that the plaintiff has not filed an administrative tort claim pertaining to either a personal injury or medical care. Therefore, the defendants argue that the plaintiff has not exhausted his administrative tort remedies before bringing suit in federal court and, therefore, any claims brought under the FTCA should be dismissed for lack of subject matter jurisdiction.

Were this the only information before the court, the undersigned would recommend that the plaintiff's FTCA be dismissed without prejudice for failure to exhaust his administrative tort claim. However, included with the plaintiff's complaint is a copy of Administrative Tort Claim, dated June 4, 2006, seeking $100,000 for injuries he alleges he sustained in the "ugly altercation" on May 4, 2006, at approximately 3:00 p..m. (Doc. 1, p. 34). The plaintiff alleges that from the time he filed the claim until the date he prepared the instant complaint, he had not received any response, not even a receipt of acknowledgment. (Doc. 1, p.29). The defendants did not address this document, and

therefore, the undersigned has no means by which to discern whether it could have been returned for technical reasons, lost in the mail, or misplaced in the Regional Office. However, even if the plaintiff did properly filed an administrative tort claim, on or about June 4, 2006, and the same went unanswered for the requisite six months before he filed his complaint, his FTCA is still due to be dismissed for failure to state a claim

The FTCA provides a remedy in damages for the simple negligence of employees of the United States. United States v. Muntz, 374 U.S. 150 (1963). In presenting a FTCA, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty, and (3) that the negligent breach was the proximate cause of the plaintiff's injury or loss. Mohler v. United States, 196 F.Supp. 362, 364 (W.D. Pa. 1961), *aff'd*, 306 F.2d 713 (3rd Cir.), *cert denied*, 371 U.S. 923 (1962).

The United States is immune from certain intentional torts committed by its agents. For instance, the United States is not liable for claims arising out of assault and/or battery committed by federal employees within the scope of their employment unless the employee was an investigative or law enforcement officer. See 28 U.S.C. § 2680(h). The United States Supreme Court has determined that the broad phrase "any other law enforcement officer", as used in Section 2680(c) covers all law enforcement officers including BOP officers. Ali v. Federal Bureau of Prisons, 552 U.S. 214 (2008). Therefore, it seems reasonable that defendants Crickard and Gorundy should be considered law enforcement officers for purposes of § 2680(h).

While the undersigned has found no Fourth Circuit case on point, the Third Circuit has addressed a FTCA claim regarding § 2680(h) which is persuasive. See Pooler v. United States, 787 F.2d 868 (3rd Cir. 1986). In that case, the Court addressed a FTCA claim regarding the conduct of a police officer employed by the Veterans Administration. The Court noted that § 2680(h) waives

the government's sovereign immunity with regard to certain acts or omissions of law enforcement or investigative officers of the United States and added that "[t]he statute defines an investigative or law enforcement officer as "any officer of the United States who is empowered by law to execute searches, seize evidence, or to make arrest for violations of federal law.'" Id. at 872. The Court then noted that despite a generous reading of the complaint, it did not assert that the VA official had "committed an intentional tort while executing a search, seizing evidence, or making an arrest." Id. The Court further noted that it was in the course of those "specified government activities...that government agents come most directly in contact with members of the public." Id. Based on the underlying legislative history, Pooler concluded that the intentional tort exception should only apply to activities of officers "engaging in searches, seizures or arrests." Id.

Applying this reasoning to the case at hand establishes that the plaintiff cannot prevail under the FTCA. The alleged conduct of defendants Crickard and Gorundy on May 4, 2006, did not occur during the course of an arrest. The challenged actions were not undertaken during the course of a search. Finally, there was no seizure of evidence as contemplated by § 2680(h). Accordingly, the plaintiff's FTCA should be dismissed.

**D. Disciplinary Hearing**

The plaintiff appears to alleges that he should not have subjected to a disciplinary hearing at Hazelton on the charge of Assaulting Any Person after he was acquitted in district court of the charge of Assault with a Dangerous Weapon. Specifically, the plaintiff complains of facing "two separate proceedings for the same charge within the same jurisdiction." (Doc. 1, p. 16). However, no where in the complaint does the plaintiff allege that his due process rights were violated before or during the disciplinary hearing. Therefore, even though the plaintiff lost good conduct time as part of the sanctions imposed as the result of his disciplinary hearing, the court need not review the disciplinary

15

proceeding to determine whether the due process guarantees required by Wolff v. McDonnell[6] were followed.

With respect to the plaintiff's complaint that he was subjected to two separate proceedings for the same charge, the same is clearly without merit. In a case remarkably similar to the instant matter, the inmate was sanctioned for having committed among other things, the prohibited offense of "Assaulting Any Person." Between the time the disciplinary hearing was conducted and the final report of the Disciplinary Hearing Officer was issued, the inmate was indicted on federal charges for assaulting a federal officer and was acquitted. The inmate claimed his acquittal "negated" the disciplinary proceeding. The district court found that "[t]he results of a criminal prosecution have no bearing on the inmate disciplinary process finding that they are two completely separate and distinct jurisdictions for which different evidentiary standards apply." The court further found the inmate's due process right were not violated since the prison disciplinary proceeding did not subject the inmate to a criminal conviction. Boyd v. O'Brien, 2008 WL 2074073 (W.D.Va.). Accordingly, the plaintiff's complaint regarding his disciplinary proceeding should be dismissed.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (dckt. 69) be **GRANTED,** and the plaintiff's Bivens claims be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies, and his FTCA and claims regarding his disciplinary proceeding be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within ten (10) days after being served with a copy of this report and recommendation, any

---

[6] 418 U.S. 539 (1974)

16

party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: November 19, 2009

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE